UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | |
| : CRIMINAL NO. 1:13-CR-13-03 | |
| : | |
| JESSE BREWER, : | |
| Defendant : | |

*M E M O R A N D U M*

*I.        Introduction*

We are considering two motions to suppress evidence.  (Doc. 164; Doc. 165).  This matter relates to a two count indictment returned by the Grand Jury on May 15, 2013.  (Doc. 22).  Count one of the indictment charges Jamell Smallwood, Timothy Forbes, and Jesse Brewer with interference with commerce by robbery, a violation of 18 U.S.C. § 1951(a).  (Id.).  Count two charges the same defendants with the use of a firearm during a crime of violence, a violation of 18 U.S.C. § 924(c)(1)(A).  (Id.).  Brewer has filed two motions to suppress evidence, each seeking to exclude evidence recovered from a cell phone.  For the reasons discussed below, we will deny both motions.

*II.       Background*

On July 12, 2012, at approximately 10:28 a.m., three individuals robbed White Jewelers in York, Pennsylvania.  (Doc. 164-4 at 4).  During the course of the robbery, one of the assailants was accidently shot by a co-conspirator.  (Id. at 5).  Thereafter, the robbers fled the store in a green Hyundai Elantra, later determined to be

stolen. (Id. at 4). Police located the Elantra a short distance away in the parking lot of an apartment complex. (Id.). A witness reported that four individuals exited the Elantra and entered a black Chevrolet Impala. (Id.). The license plate of the Impala was registered to Zarifa Lawson of Allentown, Pennsylvania – the girlfriend of Timothy Forbes. (Id. at 4, 6). The investigating officers contacted Allentown Police Department and learned that the Impala had been stopped in a drug sweep two and half months earlier. (Id.). At that time, it was driven by Jamell Smallwood. (Id. at 5).

      A few hours after the robbery, Jamell Smallwood was admitted to Bronx Lebanon Hospital with a gunshot wound to his abdomen. (Id.). New York City Police Department responded to the hospital to interview Smallwood. (Id.). Smallwood was uncooperative. (Id.). His sister arrived at the hospital and told police that Smallwood lived in Allentown, Pennsylvania and that she did not know what he was doing in New York. (Id.). NYPD contacted Allentown Police Department to inquire about Smallwood. (Id.). Allentown advised them of the robbery and that one of the robbers was shot. (Id.). Investigating officers filed a criminal complaint against Smallwood and procured a warrant for his arrest. (Doc. 164-1). Thereafter, NYPD arrested Smallwood. (Doc. 164-4 at 5). At the time of his arrest, Smallwood was in possession of a cell phone. (Id.). Smallwood identified the phone as his and told police that his phone number was (470) 334-5777. (Id. at 6). NYPD seized the phone and subsequently turned it over to investigating officers. (Id.).

On July 13, 2012, the police interviewed Timothy Forbes' girlfriend, Zarifa Lawson. (Id.). Lawson viewed the security camera footage of the robbery and identified Forbes as one of the robbers. She also advised that Forbes' cell phone number was (484) 707-1632. (Id.).

On July 20, 2012, investigating officers applied for and were granted search warrants for Smallwood's phone[1] and Forbes' phones. (Doc. 164-4). A common call analysis of those phones revealed that both phones had contact with one common number around the time of the robbery – (347) 965-4252. (Doc. 165-1 at 5). On September 4, 2012, this information, in turn, was used to acquire a search warrant for the 4252 phone. (Doc. 165-1). That search disclosed that the phone was subscribed to Jesse Brewer. (Doc. 165-2 at 4). On January 23, 2013, investigating officers applied for a second search warrant for Brewer's phone, this time seeking call detail records. (Doc. 165-2). The affidavit of probable cause relied on the facts recovered from the previous search of Brewer's phone and the search of Smallwood's phone. (Id. at 5). Finally, on March 8, 2013, police applied for a third search warrant for Brewer's phone, seeking GPS call origination and termination information. (Doc. 165-3). The affidavit of probable cause for that warrant relied on the facts recovered from: (1) the first search of Brewer's phone; (2) the search of Smallwood's phone; and (3) the search of Forbes' phone. (Id. at 5).

---

1. We recognize that Brewer contests whether the phone in Smallwood's possession actually belonged to Smallwood, and we will address that argument below. For now, we will call this phone "Smallwood's phone" simply for the sake of clarity.

On April 8, 2015, Brewer filed his motions to suppress and requested evidentiary hearings. The first motion asserts that the search warrant for Smallwood's phone was invalid because the affidavit lacked probable cause. (Doc. 164 at 5). In his second motion, Brewer argues that the search warrants issued for his phone were based on unlawfully obtained information from Smallwood's phone, and therefore all the information recovered from his phone must be suppressed as fruit of the poisonous tree. (Doc. 165 at 7). Because both of Brewer's motions hinge on the search of Smallwood's phone, we focus our discussion on the validity of that search.

*III.        Discussion*

*A. Capacity to Challenge*

As a threshold matter, we must decide if Brewer has the capacity to challenge the search of Smallwood's phone. Fourth Amendment rights against unreasonable searches and seizures are personal in nature. Rakas v. Illinois, 439 U.S. 128, 140 (1978). Therefore, a criminal defendant only has the capacity to challenge a search if the search violates his own Fourth Amendment rights, not the rights of a third party. Id. at 134, 140. This requires that the defendant demonstrate that he had a legitimate expectation of privacy in the place invaded. Katz v. United States, 389 U.S. 347, 353 (1967). Brewer argues that he had a legitimate expectation of privacy in the phone possessed by Smallwood because the subscriber information for the phone listed Brewer as the financially liable party, the billing party, and the user. (Doc. 166 at 6-8).

To demonstrate a legitimate expectation of privacy in the placed searched, the person challenging the search has the burden of showing two things: (1) he manifested a subjective expectation of privacy in the object – *i.e.*, by his conduct, he has exhibited an actual expectation of privacy; and (2) that expectation is one that society recognizes as reasonable. Minnesota v. Olson, 495 U.S. 91, 95-96 (1990); United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011). "While property ownership is clearly [one] factor to be considered . . ., property rights are neither the beginning nor the end of [a] [c]ourt's inquiry" into this showing. United States v. Salvucci, 448 U.S. 83, 91-92 (1980). Several other factors are relevant: whether the party had a possessory interest in the place searched; whether the party can exclude others from the place searched; whether the party took precautions to maintain privacy; and whether the object searched was voluntarily turned over to third parties. Warner v. McCunney, 259 F. App'x 476, 478 (3d Cir. 2008); United States v. Coates, 462 F. App'x 199, 203 (3d Cir. 2012). Indeed, even with property rights, the Third Circuit has held that there can be no legitimate expectation of privacy if the object searched was voluntarily turned over to a third party. Coates, 462 F. App'x at 203.

Here, as the phone's subscriber, Brewer may have had some unknown property interest in the phone. But, considering the other relevant factors, it is clear to us that Brewer has failed to satisfy his burden of demonstrating that he manifested a subjective expectation of privacy in the phone. First, at the time the phone was seized, it was in the possession of Jamell Smallwood. Second, Brewer produced no evidence to

demonstrate that, despite Smallwood's possession, he maintained the ability exclude others from the phone or took precautions to maintain his privacy in the phone.  To the contrary, the evidence shows that Brewer voluntarily turned the phone over to Smallwood, who subsequently claimed complete ownership and control.  See Coates, 462 F. App'x at 203.  Therefore, by his conduct, Brewer did not exhibit an actual expectation of privacy in the phone.  Accordingly, we find that Brewer had no legitimate expectation of privacy and thus lacks the capacity to challenge the search of Smallwood's phone.

Even if Brewer did have the requisite capacity, we nevertheless find that an evidentiary hearing is not necessary and that the motions fail on their merits.

*B. Necessity for a Hearing*

In his motions to suppress, Brewer posits that an evidentiary hearing is necessary for three reasons: (1) to determine the circumstances by which NYPD came into possession of Smallwood's phone; (2) to determine whether Smallwood's phone was searched prior to the issuance of a search warrant; and (3) to determine and distinguish what evidence was derived from each of the three search warrants on Brewer's phone. (Doc. 166 at 3; Doc. 165 at 7).

An evidentiary hearing for a motion to suppress is not granted as a matter of course.  See FED. R. CRIM. P. 12(c).  "[T]he purpose of an evidentiary hearing in the context of a suppression motion is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct – its purpose is not to assist the moving party in

6

making discoveries that, once learned, might justify the motion after the fact." United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010).  Here, Brewer's motion to suppress makes one specific constitutional claim – the search of Smallwood's phone was unreasonable because the warrant lacked probable cause.  The circumstances of the phone's seizure and the question of whether it was searched prior to the issuance of a search warrant have no bearing on this claim.  Rather, Brewer's request for a hearing is an attempt to use the one constitutional claim actually raised to make new discoveries that may justify the motion to suppress on separate grounds.  Accordingly, an evidentiary hearing to resolve these questions is not required, as it will not assist us in ruling on the one claim Brewer raises.[2]

   Moreover, no hearing is required to determine and distinguish what evidence was derived from each of the warrants on Brewer's phone.  Only if we hold that some searches on Brewer's phone were valid, but others were not, would we need to trifurcate the information recovered from each warrant and sever the information recovered pursuant to those that were invalid.  As our discussion below reveals, that is not a holding we reach.

---

2. We also note that no evidentiary hearing is required to address the one constitutional claim that Brewer does raise.  A motion to suppress entitles a defendant to an evidentiary hearing "only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress."  Hines, 628 F.3d at 105 (citing United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)).  Brewer's attack on the search warrant poses no questions of fact.  The warrant's affidavit speaks for itself, and the question of whether it is sufficient to establish probable cause is a legal one.

*C. Merits of Brewer's Motion to Suppress Evidence*

*1. Validity of the Search Warrant*

Brewer argues that the search warrant issued for Smallwood's phone lacked probable cause because there were no facts in the affidavit that created nexus between the robbery and the phone.

When a magistrate's probable cause determination has been challenged, the reviewing court must remember that the magistrate's initial determination is given great deference. Illinois v. Gates, 462 U.S. 213, 236 (1983). A reviewing court does not engage in a *de novo* review to determine whether probable cause actually existed. Id. Rather, we ask whether there was a substantial basis for the magistrate to find probable cause. Id. at 238. Under this standard, "reviewing courts should [not] simply rubber stamp a magistrate's conclusions," United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983); however, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." Gates, 462 U.S. at 237 n.10.

When determining if there was a substantial basis, the starting point is the well-established rule: probable cause exists "when, viewing the totality of the circumstances, 'there is a fair probability that evidence of the crime will be found in a particular place.' " United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Gates, 462 U.S. at 238). This does not require "direct evidence linking the place to be searched to the crime." United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993). Instead, probable cause to search can be, and often is, "based on an accumulation of

circumstantial evidence." United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002).  From the accumulation of circumstantial evidence, a magistrate can draw reasonable inferences and conclude there is a fair probability evidence will be found in the place searched.  See, e.g., United States v. Stearn, 597 F.3d 540, 566 (3d Cir. 2010) (stating that in drug related cases, courts routinely find probable cause to search a defendant's home when there is evidence that the defendant is a drug dealer, the home searched is possessed by the defendant, and there is some connection between the home and the drug activity).

        Mindful of our deferential standard of review, we find that an accumulation of circumstantial evidence created a substantial basis for the magistrate to find probable cause to search Smallwood's phone.  First, the affidavit provided ample facts to indicate that Smallwood participated in the robbery.  It details that: (1) during the course of the robbery, one of the robbers was shot; (2) Smallwood was admitted to a hospital with a gunshot wound on the same day; (3) Smallwood matched the description of one of the robbers; and (4) two months prior to the robbery, Smallwood was arrested while driving the same car used to flee from the scene of the robbery.[3]  Second, the affidavit contained sufficient facts to show that the phone belonged to Smallwood – it stated that Smallwood identified the phone as his.  Third, despite Brewer's argument to the contrary,

---

3. We recognize that probable cause to arrest does not automatically create probable cause to search, since the inquiry focuses on a particular place and not on the activities of a particular person.  Burton, 288 F.3d at 103.  But these facts are not irrelevant to establish probable cause to search a particular place.  See id.  Probable cause to arrest increases the likelihood that the person's property will contain evidence of the crime.  Id.

Smallwood's possession of the phone at the time he was admitted to the hospital was sufficient to create a nexus between the robbery and the phone. Only a few hours after the robbery in York, Pennsylvania, Smallwood was admitted to the Bronx Lebanon Hospital in New York with a gunshot wound to his abdomen and the phone in his possession. From the emergency nature of the situation, and from the temporal proximity of Smallwood's admission to the hospital, it would have been reasonable for the magistrate to infer that Smallwood drove directly from the robbery to the hospital and therefore possessed the phone during the robbery and subsequent flight. Accord Burton, 288 F.3d at 105 (finding nexus when place searched was the first location defendant traveled following the criminal activity); Hodge, 246 F.3d at 307 (finding nexus due to physical proximity). And finally, it would have been reasonable for the magistrate to infer that information related to Smallwood's presence at the robbery would be found in the phone. See Riley v. California, 134 S. Ct. 2473 (2014) (recognizing that phones have immense storage capacity, including historic location information).

Viewing all of this evidence in conjunction, and cognizant that our deferential standard of review requires resolution of marginal cases in favor of the warrant, we find that a substantial basis existed for the magistrate to conclude there was a fair probability evidence of the robbery would be found in the phone.

Even if we determined that no substantial basis existed for the magistrate's finding, the good faith exception would preclude the exclusion of the evidence recovered from the phone.

*2. Good Faith Exception*

Pursuant to the good faith exception, if an officer obtains a warrant and executes it in good faith, "a court should not suppress evidence seized under [the] warrant's authority, even if it was subsequently invalidated . . . ." Stearn, 597 F.3d at 561 (citing United States v. Leon, 468 U.S. 897 (1984)).  "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies the application of the good faith exception" Hodge, 246 F.3d at 307-08.  Only when a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization" should the exclusionary rule apply.  Leon, 468 U.S. at 922 n.23.  This can occur in the narrow circumstance in which the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Leon, 468 U.S. at 923.  Brewer argues that the nexus between Smallwood's phone and the robbery is so lacking that a reasonably well trained officer would have known that the warrant was invalid.

An affidavit is "so lacking in indicia of probable cause" when it contains nothing more than a bare bones assertion that evidence will be found in the place searched.  See id. at 925.  Here, the affidavit is much more than a bare bones assertion.  As we have detailed above, the affidavit establishes Smallwood's involvement in the robbery, his possession and ownership of the phone, and some nexus between the crime and the phone.  Accordingly, even if the nexus is insufficient, a reasonably well trained officer would not have known that the warrant was illegal.

11

*IV.	Conclusion*

        Based on the discussion above, we will deny Brewer's motion to suppress evidence recovered from Smallwood's phone.  Further, since we find that the search of Smallwood's phone was valid, Brewer's motion to suppress information recovered from his phone as fruit of the poisonous tree must fail.  Accordingly, we will deny that motion as well.   We will issue an appropriate order.

                                              <u>/s/William W. Caldwell</u>
                                              William W. Caldwell
                                              United States District Judge